Dear Mr. Frappier:
This opinion is in response to the following questions:
 1. Under Section 336.010, RSMo 1978, does Section 336.010, RSMo 1978, which defines the practice of optometry in this state, authorize a duly licensed optometrist to examine a human eye to determine whether there is, in that eye, a pathological condition, defect, malfunction or malformation?
 2. Does the answer to question one depend in any manner on whether the optometrist has been certified as qualified to administer topically applied diagnostic pharmaceutical agents under Section 336.220, RSMo 1978?
 3. If the answer to question number 1 is "yes", with or without relation to the answer to question number two, is it legally permissible for any department of state government, including the Department of Social Services, to refuse to accept the results of such an optometric diagnosis to determine eligibility for benefits paid from state funds.
We begin our inquiry by surveying statutes and regulations relevant to your question. Section 336.010(1), RSMo Supp. 1983, defines the practice of optometry in part pertinent to your questions as follows:
 The examination of the human eye, without the use of drugs, medicines or surgery, to ascertain the presence of defects or abnormal conditions which can be corrected by the use of lenses, prisms or ocular exercises;
Section 336.210, RSMo 1978, provides:
 No official, employee, board, commission or agency of the state of Missouri, county, municipality, school district or other political subdivision of the state shall discriminate between persons licensed under this chapter and chapter 334, RSMo [relating to physicians, surgeons, and physical therapists], when requiring or recommending services which legally may be performed by persons licensed under this chapter and by persons licensed under chapter 334.
Section 336.220.1, RSMo Supp. 1983, provides:
 The state board of optometry may adopt reasonable rules and regulations providing for the examination and certification of registered optometrists who apply to the board for authority to use topically applied diagnostic pharmaceutical agents in the practice of optometry. As used in this section, the term `diagnostic pharmaceutical agents' means anesthetics, mydriatics, and cycloplegics.
Rule 13 CSR 40-91.030(1)(A), effective November 11, 1978, a regulation promulgated by the Department of Social Services, Division of Family Services, Bureau for the Blind, provides:
 Visual eligibility requirements: Prevention of blindness is a medical care program; therefore, visual eligibility for services is based on a diagnosis by an ophthalmologist or physician skilled in diseases of the eye of one of the following conditions: a progressive eye disease; a malformation or malfunction of all or part of an eye; or central visual acuity without correction of 20/200 or less in one eye.
From the facts you have provided us, it appears that the Bureau for the Blind, Division of Family Services, Department of Social Services, refuses to accept examinations made by optometrists licensed pursuant to Chapter 336, RSMo, for determinations of visual eligibility for the Prevention of Blindness Program. Your three questions seek to determine whether or not the Bureau for the Blind must accept the results of an optometric examination which identifies a visual impairment sufficient to qualify a person for the Prevention of Blindness Program conducted by the Department of Social Services, Division of Family Services, Bureau for the Blind. For the reasons which will be set out herein, it is our opinion that an examination by a licensed optometrist which reveals a progressive eye disease, a malformation or malfunction of all or part of an eye, or central visual acuity without correction of 20/200 or less in one eye must be accepted by the Bureau for the Blind as a determination that such a person is eligible for the Prevention of Blindness Program.
 I. AUTHORITY OF OPTOMETRISTS TO EXAMINE A HUMAN EYE TO DETERMINE THE EXISTENCE OF A PATHOLOGICAL CONDITION, DEFECT, MALFUNCTION OR MALFORMATION
Section 336.010 authorizes an optometrist to examine the human eye to discover the presence of those defects which can be corrected "by the use of lenses, prisms or ocular exercises." We believe it is self-evident that the determination of whether or not a defect or abnormal condition of the eye can be corrected by the use of lenses, prisms, or ocular exercises is dependent upon an initial assessment of the nature of the defect or abnormality. Only after this initial assessment is completed can it be determined if the abnormality or defect can be corrected by the use of lenses, prisms or ocular exercises.
A rudimentary excursion into the field of optometry reveals that it is the function of lenses, prisms and ocular exercises to correct for some, though certainly not all, defects, malfunctions and malformations of the eye. M. Dowaliby, Practical Aspects ofOphthalmic Optics, 3-5 (1972). Pathological conditions of the eye and certain other conditions (e.g., brain disorders which affect vision) generally cannot be corrected by lenses, prisms or ocular exercises. G. Fonda, Management of the Patient with SubnormalVision, 1-7 (1970).
Thus, although Section 336.010 does not authorize a duly licensed optometrist to examine the human eye specifically for the purpose of diagnosing every existing defect, malfunction, malformation, or pathological condition, it is within the authority of an optometrist to examine a human eye to determine whether a condition which limits visual acuity is correctable by the use of lenses, prisms or ocular exercises.
We caution here that this opinion must not be read as broadening the authority of optometrists beyond the limits expressed in the statutes. An optometrist is not authorized to diagnose finally a specific disease of the eye or to treat a disease of the eye or a malformation or malfunction of the eye which is not correctable with lenses, prisms or ocular exercises. Instead, the optometrist is qualified by education and authorized by law to determine the visual acuity of an eye, and, in so doing, may detect the presence of a pathological condition, malformation or malfunction which is not correctable with lenses, prisms or ocular exercises in the course of examination. Upon detection of a condition which the optometrist cannot treat, we believe appropriate optometric practice is to refer the patient to an ophthalmologist or physician skilled in diseases of the eye.
 II. RELEVANCE OF THE ABILITY OF AN OPTOMETRIST TO ADMINISTER TOPICALLY APPLIED DIAGNOSTIC PHARMACEUTICAL AGENTS UNDER SECTION 336.220, RSMo SUPP. 1983
As you question notes, the General Assembly amended the laws relating to optometrists in 1981 to permit certain optometrists who are certified by the Board of Optometry, to employ topically applied diagnostic pharmaceutical agents in the practice of optometry. Section 336.220, RSMo. Supp. 1983. Section 336.220.4 provides:
 Any provision of Section 336.010 to the contrary notwithstanding, a registered optometrist who is examined and so certified by the state board of optometry may administer topically applied diagnostic pharmaceutical agents in the practice of optometry.
Section 336.220.5 provides:
 Any optometrist authorized by the board to administer diagnostic pharmaceutical agents shall refer a patient to a physician licensed under chapter 334, RSMo, if examination of the eyes indicates a condition, including reduced visual acuity, which requires medical treatment, further medical diagnosis, or further refraction. This referral is not required on unknown or previously diagnosed conditions . . . . Any optometrist violating this section shall be subject to the provisions of Section 336.110. [Emphasis added.]
Because certain conditions of the eye can only be detected when the eye is dilated (by the use of a mydriatic) or the focus is briefly "paralyzed" (by the use of cycloplegics) the clear language of Section 336.220 evinces an intention on the part of the General Assembly to permit board certified optometrists to use diagnostic pharmaceutical agents. The use of such agents enables the optometrist to determine the nature of the defect or abnormal condition affecting the vision of a patient more accurately. In the course of an optometric examination using diagnostic pharmaceutical agents, if a certified optometrist discovers a condition which suggests the possibility of a pathology of the eye, the General Assembly has placed an affirmative duty on the optometrist to refer such a patient to a physician for medical treatment, further medical diagnosis or further refraction. Section336.220.5. We believe the General Assembly's language regarding an optometrist's affirmative duty to refer certain patients, in Section 336.220, is merely a recognition of accepted optometric practice which exists without reference to the duty expressed in the statutes.
In our opinion, an examination of the eye by an optometrist using a diagnostic pharmaceutical agent must still be conducted consistent with Section 336.010 "to ascertain the presence of defects or abnormal conditions which can be corrected by the useof lenses, prisms, or ocular exercises." [Emphasis added.] The fact that the use of diagnostic pharmaceutical agents enhances the ability of an optometrist to determine the nature of a defect or abnormality does not change the practice of optometry. Thus, in our opinion, the certification by the board of an optometrist to employ diagnostic pharmaceutical agents is not required in order for an optometrist to examine a human eye to determine whether there is, in that eye, a condition or defect which is correctable with lenses, prisms or ocular exercises.
 III. ACCEPTANCE OF OPTOMETRIC DETECTION OF PROGRESSIVE EYE DISEASE, MALFORMATION OR MALFUNCTION TO ALL OR PART OF AN EYE, OR CENTRAL VISUAL ACUITY WITHOUT CORRECTION OF 20/200 OR LESS IN ONE EYE BY THE DEPARTMENT OF SOCIAL SERVICES
Your opinion request indicates a concern with the provisions of 13 CSR 40-91.030(1)(A) which bases eligibility for the Prevention of Blindness Program to certain findings made by an ophthalmologist or physician skilled in diseases of the eye. In our view, the regulation in question creates three separate criteria for eligibility to the Prevention of Blindness Program. A person who meets any one of the listed criteria, qualifies for the program. The criteria are: 1) "a progressive eye disease",
Central visual acuity without correction of 20/200 or less in one eye is unquestionably within the authority of an optometrist to determine.[1] The other two criteria for eligibility are not dependent on visual acuity. Given the educational requirements for licensure of an optometrist in Missouri,[2] we believe that the detection of the presence of progressive eye disease or malformation or malfunction of the eye is inherently within the authority of an optometrist, considering the nature of the optometric examination and accepted optometric practice of referral of appropriate patients to medical doctors for final diagnosis and treatment of conditions of the eye not correctable by an optometrist.
Section 336.210 expresses the policy of the State of Missouri that state agencies may not practice discrimination against optometrists in favor of physicians and surgeons when "requiring or recommending services which legally may be performed by persons licensed [as optometrists]. . . ." The Bureau for the Blind, as a part of the Division of Family Services and the Department of Social Services, is a state agency to which Section 336.210
applies. Appendix B, Section 13, RSMo 1978; Section 207.010, RSMo 1978; Section 209.010, et seq., RSMo.
Because we believe that an optometrist may determine the existence of defects and abnormalities in the human eye pursuant to Section 336.010, and because the Bureau for the Blind is a state agency, we do not believe that the Bureau for the Blind may refuse to accept the results of optometric examinations to determine eligibility for benefits paid from state funds.[3]
CONCLUSION
It is the opinion of this office that a licensed optometrist may in the course of examining the human eye, detect the existence of a pathological condition, defect, malfunction or malformation of the human eye. The Department of Social Services must accept the results of an optometric examination to determine a person's eligibility for benefits paid from state funds if the optometrist is authorized by law to perform the examination upon which eligibility is based.
Very truly yours,
 JOHN ASHCROFT Attorney General
[1] Under Section 336.030, RSMo Supp. 1983, no person may be licensed in Missouri to practice optometry unless that person has graduated from a school of optometry approved by the State Board of Optometry. By rule, the State Board of Optometry currently approves those colleges of optometry which are accredited by the Council on Optometric Education. See 4 CSR 210-2.020(2). The study of optometry is a four year professional program, and may be commenced only upon satisfaction of certain preliminary educational qualifications. In addition, prior to licensure as an optometrist in Missouri, the optometry graduate must pass the examination administered by the National Board of Examiners in Optometry. See 4 CSR 210-2.020(3). This examination tests an individual's knowledge in the following subjects: Theoretical Optics, Visual Science, Ocular Anatomy, Ophthalmic Optics, Theory and Practice of Optometry, Pathology, Public Health, and Pharmacology. The three-part test contains a total of 735 questions, to be answered in a total period of 20 hours. After passing the examination, an applicant for Missouri license to practice optometry must also pass the practical examination administered by the State Board of Optometry. Id.
[2] In the course of the preparation of this opinion, we reviewed the curricula of the Southern College of Optometry, Memphis, Tennessee, and the University of Missouri, St. Louis, School of Optometry. In order to obtain a Doctor of Optometry degree (O.D.), students in each of these institutions must successfully complete courses of study in, inter alia, Ocular or Ophthalmic Pathology and Systemic Pathology. As we noted in footnote 1, the licensing examination includes questions relating to Ocular Anatomy and Pathology.
[3] This view is further supported by reference to Section209.040, RSMo. Supp. 1983. There the General Assembly provided:
 No person shall be entitled to receive a pension except upon a scientific vision test supported by a certificate of an ophthalmologist, a physician skilled in disease of the eye, or an optometrist, designated or approved by the department of social services to make such examination. . . ." [Emphasis added].